No. 87.—THOMAS HOXEY and others, plaintiffs in error, *vs.* ED-WARD CAREY, assignee, &c. and others, defendants in error.

[1.] Under the Act of 1799, which declares that the Courts, in Equity cases, "shall order the proceedings in such manner as that the same shall be ready for trial at farthest at the third term from the filing of the bill inclusive, unless very special cause be shown to induce the Court to continue the same, which shall not extend to more than four terms: " *Held,* that a bill is not to be considered as filed, so that the limitation as to time in regard to the ordering of the proceedings shall run against the complainant, until all necessary parties are made and served.*

[2.] When parties are made and served, the complainant is entitled to the three terms without, and the fourth with a showing, exclusive of such delay in the cause (such as the death of a party, the taking up of the cause to the Supreme Court, &c.) as is created by operation of law.

[3.] When a cause in Equity is set down for trial, the parties are entitled to continuances, as at Common Law.

[4.] When a necessary party defendant is added to a bill, it is as an original bill to him, and he is entitled to all the time to plead, answer and demur thereto, which by law and the rules of the Court is allowed to an original defendant.

[5.] It is not a sufficient response to a motion to dismiss a cause for want of diligence in the prosecution, that a necessary party has not been added and served, unless it appears to the Court, that the failure to make such party before, and within time, is not owing to the negligence of the complainant.

[6.] A party complainant is entitled to notice of a motion to dismiss for want of prosecution.

[7.] A bill will not be dismissed for want of prosecution, if parties which are necessary, have not been served, or being served, have not answered, without negligence on the part of the complainant.

* Note. See next two cases.

[8.] Time will be extended to perfect service, upon a sufficient showing, within the discretion of the Court.

In Equity, in Muscogee Superior Court.   Decision by Judge IVERSON.   November Term, 1852.

The complainants having made various and lengthy amendments to their bill, and there being numerous defendants, at May Term, 1852, the Court passed an order requiring service of the amendments to be perfected on the defendants within sixty days, and that the defendants appear, and plead, answer or demur, on or before the next term of the Court.

At November Term, 1852, complainant's solicitor moved to extend the said order, so as to allow the complainants to serve the defendants within sixty days after the adjournment of the Court; and that defendants be allowed until the first day of the next term to plead, answer or demur.   In support of this motion, Wm. Dougherty, complainant's solicitor, stated, that "he came to Columbus in August, 1852, for the purpose of perfecting service of these amendments; that he was taken sick, and unable to attend to this or other business, and was obliged to leave the city, on account of his health; that before leaving, he procured the services of Wm. B. Stokes to serve these amendments; that he did serve the most of them, but owing to the great length of the amendments, he was unable to serve them all in due time."

The Court granted the motion, and defendant's solicitor excepted.   Complainant's solicitor then moved the Court for an order to have William Brown of Marion County, served with a copy of the original bill, with the amendments thereto, within sixty days from the adjournment of the Court; and that he appear and plead, answer or demur, by the first day of the next term of the Court.   In support of this motion, Wm. Dougherty stated, that he had caused this bill to be served on William Brown, of Muscogee County, under the belief, on the part of complainants and complainant's solicitor, that he was the stockholder in the Chattahoochee R. R. & Banking Company

of that name, but that he had been assured, and was satisfied, that it was Wm. Brown of Marion County who was the stockholder.

The Court granted the motion, and defendant's solicitor excepted.

Defendant's solicitor then moved to dismiss the bill, on the ground that the same was not then ready for trial, when more than four terms had elapsed since the filing of the original bill.

The Court refused the motion, and defendant's solicitor excepted.

On these several exceptions, error has beeen assigned.

Jones, Benning & Jones, for plaintiff in error.

Wm. Dougherty, for defendant in error.

*By the Court.*—Nisbet, J. delivering the opinion.

The consideration of the motion to dismiss this bill, will involve all other points made in the assignment. The bill was filed originally by Mr. Carey, assignee of the *Bank of Columbus,* against the stockholders of the Chattahoochee R. R. & Banking Company, to compel them to pay the debts due by the corporation upon its bills or notes. By amendment, all other creditors were allowed to come in as parties complainants, and some of them were accordingly made parties. A large number of persons were made parties defendants. Some were served at once, or acknowledged service, and as to others, time was given for perfecting service. From time to time, new parties were added, upon motion to amend, and the bill was amended by striking some who were originally made parties. It was therefore a bill in behalf of a large class of creditors, to assert their claims upon a number of persons who are charged to be stockholders in the Chattahoochee R. R. & Banking Co. upon equitable principles, and according to the charter of that corporation. With the legal merits of this bill, this writ of error has nothing to do. All the questions which it brings to our notice, are questions of

Equity practice and of statutory construction. They, however, depend very much upon the nature and objects of the bill, and therefore its character is thus stated.

It is important to recite the record history of the bill with more minuteness. It was returned to May Term, 1847. At November Term, 1848, time was given to perfect service, and the bill amended so as to make the executor of Ford, a deceased defendant, a party. At May Term, 1849, it was amended by letting in other creditors, as complainants, and by striking from the record certain defendants. Nothing appears to have been done in the cause from May, 1849, until May Term, 1851. It went up, I believe, to the Supreme Court, upon some interlocutory question, and I presume in this interval. At May Term, 1851, an important amendment was made to the bill, charging an assignment of the effects of the Chattahoochee R. R. & Banking Co. and making the assignees parties defendants. At the same time, an order was passed requiring service of the amendment, by which those that had not answered, were to be served by filing the amendments in the Clerk's office; and the new defendants, at that term added, by original service within ten days after the adjournment of the Court. At the November Term following, that is, in November, 1851, the time for perfecting service of the last amendments was extended to the first of March thereafter, and the defendants ordered to plead, answer and demur at the next term, and at that next term, to wit, in May, 1852, the order directing service on the original defendants who had not answered by filing the amendment in the Clerk's office, was revoked, and the usual service directed within sixty days of the next term, with leave to plead, &c. at that term. At the December Term, 1852, upon a showing made by Mr. Dougherty, farther time was given to serve the amendment, until within 60 days of the next term, and the defendants to be served were ordered to plead, &c. at that next term. To the order granting this farther time to perfect service of the amendment, *the plaintiffs in error excepted.* This is the first exception, and to it, I will return in due time. At the same time, that is, in December, 1852, an order was granted to serve one of

the defendants, Brown, upon the statement of counsel, that by mistake and misapprehension of counsel, and of the officers of Court, he was charged in the bill to reside in the County of Muscogee, when in truth he resided in the County of Marion; to which order the plaintiffs in error excepted, and this is the *second exception*—to which also I will hereafter again advert. At the same time, that is, in December, 1852, a motion was made by the plaintiffs in error to dismiss the bill "for a want of due and diligent prosecution of the same, and for the reason that the proceedings therein had not been so ordered that the same might be ready for trial at that term of the Court, although more than four terms had then elapsed from the filing of the original bill." This motion was refused and exception taken; and this is the *third exception*, and first, as stated in the outset, to be considered. The grounds of this motion are two. *First*, because the proceedings on the bill had not been so ordered that the same might be ready for trial at the term when the motion was made, although four terms had elapsed since the bill was filed. *Second*, because it had not been prosecuted with due diligence. The fact assumed in the first is true, to wit, that four terms had elapsed since the filing of the bill. More than ten had elapsed, the bill being filed at April Term, 1847, and the motion to dismiss being made in December, 1852.

[1.] The plaintiff in error makes the point, that if a bill in Chancery is not ready for trial at the fourth term after it is returned, it will be dismissed, because the Act of 1799 declares, that proceedings on bills in Chancery shall be ordered by the Court in such manner as that they shall be ready for trial at farthest at the fourth term after they are filed, the filing term being included. He excepts no bill from this literal construction of the Statute, but insists that by the mandate of the law, any party who goes into Equity must have his cause ready to be set down for trial at the fourth term, at the peril of going out of Court. He claims that the Act of 1799 is not only directory to the Courts, but obligatory upon the party. We are called, therefore, to give a construction to this Act; and a more important question in relation to Chancery proceedings than this has

Hoxey *vs.* Carey.

not been before this Court since its organization; for if the construction prevails, which I have stated, it is obvious that the doors of Chancery will be closed against a large class of litigants, and the heaviest litigation. All cases which in their very nature cannot be matured for being set down for trial by the fourth term after the filing of the bill, will be withdrawn from the Chancery jurisdiction, and most frequently those are the cases to the trial of which the rules and principles of that jurisdiction are indispensable. The provisions of the Statute literally, and more at large, after specifying the cases in which the Superior Courts shall exercise the powers of a Court of Equity, are as follows: "and the proceedings in all such cases, shall be by bill, and such other proceedings as are usual in such cases, until the setting down of the cause for trial, *and the Courts shall order the proceedings in such manner as that the same shall be ready for trial at farthest at the third term from the filing of such bill inclusive, unless very special cause be shown to induce the Court to continue the same, which shall not extend to more than four terms. Prince's Dig.* 447.

I agree with the counsel, that the purpose of the Legislature in this enactment, was to expedite causes in the Chancery Courts. The Legislature of '99 had a wholesome dread of delay in the administration of the law, particularly in Chancery. This dread continues to the present moment, showing itself in every Act which relates to the Judiciary. We do not deny but that apprehension of delay had then and has now, a legitimate foundation in the history of Courts of Chancery, both in this country and in England; and when adopting, as the Act of '99 unquestionably does, the pleadings and practice of the British Courts of Chancery, so far as applicable under our system, it was wise to say, that proceedings in Equity cases should be so ordered as that they should be set down for trial at the fourth term. And whilst we admit it to be the duty, we declare it to be the pleasure of this Court, to give full effect, in the construction of Statutes, to this general policy of the General Assembly. We are not, however, required in so doing, to defeat any other clearly declared general intent of the Legislature. It is our duty, if

possible, to give effect to all Legislative policy—to enforce *all* the laws, and every part of every Act—to make the enactments of the Legislature to stand together harmoniously. To do this, we are at liberty to liberalize some, and to litteralize others. For clearly in the construction of any one law, or section, or clause of a law, other laws, sections or clauses, in *pari materia*, are not only to be considered, but respected. Thus, upon construing this clause of the Act of '99, we are bound to consider it in connection with other clauses and sections which relate to the jurisdiction of Courts of Chancery, and so to interpret it, as to give it a fair effect, and at the same time maintain for Courts of Equity all the jurisdiction with which they are clothed. If then, the construction of this clause, which is claimed by the counsel for the plaintiff in error, must needs disrobe the Courts of Chancery of a part, and that a very material part of their jurisdiction, and it is susceptible of another construction, which does not in the least impair that jurisdiction, it is our duty to repudiate the former, and adopt the latter. No better illustration of this rule can be found than this case affords. Here is a case confessedly belonging to the jurisdition of Chancery—indeed belonging to that and to no other jurisdiction. A bill filed to require the unpaid stock of an insolvent bank to be bought in and applied to the extinguishment of its debts; the stockholders are numerous, amounting to scores, if not to hundreds; they are all interested in the decree to be rendered; they have rights *inter sese ;* they are all necessary parties; they are not all known to the complainants; they are to be found out when and where they can best find them out; they reside in various Counties of this State or in various States of this Union; some are dead; and if their estates are represented, the representatives are to be brought in; and if not, representation is to be procured by the usual course before the Ordinary. Large amounts are involved, and great questions of legal and equitable right are to be settled, and one decree is to do the work of many separate suits. Now, I assume it to be true, from the very nature of such a bill, that it cannot be ready to be set down for a trial at the fourth term after the bill is brought. No one at all familiar

with proceedings in our Courts of Equity, will say that this assumption is not most reasonable.   If then, the rule is adopted that all cases must, by the command of the Statute, be ready for trial by the fourth term; this case and all of like character would go out of Court, and the effect of the rule would be to deny to our Equity Courts jurisdiction in all such cases. . The terms of the exercise of that jurisdiction would be absolutely impracticable, and therefore the jurisdiction itself would be denied. To avoid a result so destructive to the rights of litigants in Chancery; to maintain unfettered the proper and so highly remedial jurisdiction of that Court; I say, that it becomes the duty of this Court to deny that construction which will establish such a rule, if possible.   It is possible to do so in this case, and yet give a decided efficiency to the Act of '99.   We hold then, in regard to the limitation as to time which the Act of '99 imposes, in the ordering of the proceedings in cases in Equity, that time does not commence to run until the bill is filed, and that no bill for the purposes of that limitation is to be considered as filed, until all proper and necessary parties are made and served.   When the parties are on the record, and before the Court, then the bill is filed, and then it is that the mandate of the Statute goes forth to the Court, to order the proceedings in such manner as that it shall be ready for trial by the fourth term, that filing term included.   And if not so ordered, the party complainants must take the consequences.   In the majority of cases, all the parties can be and are served at the term to which the bill is returnable,   because the majority of cases are between a single plaintiff and a single defendant, or a few complainants and a few defendants.   In such cases, our rule harmonizes with that of the plaintiffs in error, and time runs against the complainant as to ordering the proceedings, from the return term of the bill.   And in all such cases, it is true, as I said in *Green vs. McLaren*,   that the idea of the Legislature was, to give one term for appearace, one to answer, and the third for trial.   7 *Geo. Rep.* 109.

[2.] And so, also, is this true of all cases, after the bill is served, and all the parties are before the Court.   Then, says

the Legislature, you shall have three terms, and upon very special cause shown, four, within which to perfect the pleadings and make up the issue. In either case, the limitation of the Act takes effect, beginning when the Court has the parties before it; beginning at the time when the bill can alone be considered as filed, and that is when the necessary parties are served. Upon the principle before stated, that Courts are bound to give effect to the whole law, maintaining, as far as possible, the rights of parties, under all legal provisions, exceptions must be made to the operation of the rule, that a party complainant must, at his peril, be prepared for the setting down of the cause at the fourth term after the parties are all before the Court. The Statute forbids a suit against the administrator of a deceased person, until twelve months after the issuing of letters of administration. In the event, then, of the death of a necessary party defendant, after the bill is filed, the complainant will be entitled to the four terms, exclusive of the 12 months, during which the law forbids action against such administrator. So if a complainant dies, the time required to make his representative a party, in addition to the four terms, will be allowed. So, also, when upon any interlocutory decision, the cause is taken up, the time necessary to the return of the judgment of the Supreme Court will be allowed. And generally, when the cause is delayed by the operation of law, it shall not result in any abatement of the rights of the complainant to his four terms—three of which he is entitled to as matter of rignt, and one upon a showing.

[3.] And where a cause in Equity is set down for trial, according to any and all the views now presented of the Act of 1799, parties are then entitled to continuances as in cases at Common Law. *10th Rule of Equity Practice.*

The construction now given to the Act of '99, is not new. The Courts of Georgia have acted upon it within my professional memory—I have no doubt, from the earliest administration under that Act. The absolute necessity of it, in very many cases, is manifested in numerous illustrations. I will give but one. Parties defendants are entitled to plead, answer and de-

Hoxey *vs.* Carey.

mur to the bill. By our Act of '99, the plea and demurrer must be filed at the first term, and then argued and decided, and if overruled, they must answer by the next term. When the answer comes in, the complainant is entitled to except, and if the exceptions are sustained, the defendant must answer fully. Our 3d Rule in Equity, with a view to convenience, and, as was supposed by its framers, in accordance with the spirit of the Act of '99, declares " that a plea or demurrer in part, or to the whole of a bill, shall be filed at the return term, and shall be argued during the term, or upon motion and cause shown, at such other time as the Court may direct. The Court, however, will, in its discretion, upon sufficient cause shown, grant further time for filing such plea or demurrer, and such order shall express the time within which the same shall be filed, and the further time thereafter within which it shall be argued, or be considered as dismissed, &c." 2 *Kelly,* 481.

And under the latter clause of this rule, I suppose has grown up what is called the usual rule, obtaining in some of the Circuits, (in the Ocmulgee and Flint Circuits, certainly,) which is, that the defendant plead, answer and demur, not demurring alone, within four months after the adjournment of the Court. This usual rule is granted on motion at the first term, and without cause shown, and the construction is, that the filing of the answer does not overrule the plea or demurrer, but defendant may rely upon each, the argument and decision being had first upon the plea or demurrer. In other Circuits, I am aware that no such *usual rule* has been adopted, and the Courts act upon the rule as it stands in the Code, and as I have above quoted it. What I now mean to note is, that the right of pleading, demurring and answering, belongs to every material party defendant—to every one against whom a decree is prayed, or who will be affected by the decree to be rendered. This right belongs to the defendant, no matter when brought in—to each and every defendant.

[4.] Thus, a defendant made party at the fourth term, is entitled to plead, &c. and he is also entitled to all the time to do so (under the same rules of law and practice) which is allowed to an original defendant. In a case like this, several new de-

fendants may be added at different times.  As to each, the bill is as a bill against himself alone, so far as regards his rights of defence.   These things being so, by the rule which we are asked to adopt, one of two things would frequently follow—either the complainant would be held to go out of Court for a nonjoinder, primarily, of the necessary parties, or the new defendants must be deprived of the right of pleading, answering and demurring, according to law and the rules of practice.   It is said that the construction which we put upon the Act of '99, will create interminable delays.   It is to be feared, in these days of hot haste, that ideas of judicial rapidity of movement may become ultra, and mistaking reasonable time for a just and safe administration of the law, for long delay, we involve that administration in such disorder and confusion, as to defeat the very end proposed.   For myself, I venture to record here my own conviction, that whilst I would most sedulously avoid a denial of justice by delay, yet I know of no rule for Judicial action, or Judicial reform, so safe as that involved in the homely Latin maxim, *Festina lente.*

[5.] But a security against unreasonable delay, is found in the obligation of the Court to enforce upon the complainant proper diligence in the making of parties, and in the right which the defendant has to move the dismissal of the bill for want of due prosecution ; and I am clear that it would not be a sufficient response to such a motion, for the complainant to allege the necessity of making other persons parties, unless he also can satisfy the Court that the failure to make such persons parties before and within time, is not owing to his neglect.

With such views, we hold that the overruling the motion to dismiss the bill because four terms had elapsed since its filing, was right.   Nor do we think that it ought to have been dismissed for the want of diligence in the prosecution.   Upon our construction of the Act of '99, as before intimated, the question of diligence is not excluded.   Taking into view the character of this bill, the number of the parties complainant and defendant, the amendments made, the death of one of the defendants after the bill was filed ; and particularly, considering the amend-

ments of May, 1851, in relation to the assignment, it being a material addition to the complainant's case, which brought in several new defendants, and which it was necessary to serve on all the previously existing defendants; we cannot say but that the cause has been prosecuted with diligence.

[6.] And it is the English rule, and of force in our Chancery Courts, that before a bill can be dismissed for want of prosecution, there must be notice to the complainants. The motion, certainly in our practice, must take the form of a motion *ni si*. 1 *Smith's Ch. Pr.* 314.   2 *Danl. Ch. Pr.* 931.

[7.] When the motion was made to dismiss, that is, at November Term, 1852, the amendment of May Term, 1851, had not been fully served; time was then given to perfect service, upon motion, sustained by a showing as to all the defendants. Some of them who had been served, had not answered, and some had not been served at all. If the amendment referred to, was not irregularly allowed, and we do not suppose that it was, inasmuch as its allowance was not excepted to, the bill would not be dismissed for want of prosecution. As to this amendment, the bill was within the four terms. Indeed, if the amendment making *Brown*, of *Marion*, a party at November Term, 1852, was well made, the whole bill, as to him, had not been filed, and when served, he will be entitled to the terms requisite for pleading, answering and demurring. Upon the whole, although about five years had elapsed since the bill was sued out, yet looking to its peculiar character and objects, and particularly to the necessity of making so many persons parties, we are not prepared to say that it has not been prosecuted with diligence.

[8.] In relation to the exception founded on the order extending the time for service of the amendment of 1851, we think, still keeping in view the number of persons to be served, that the time was properly given, upon the cause shown by Mr. Dougherty. His sickness and incapacity to attend to any business, are the reasons assigned why he did not himself effect the service within time, and it farther appears that, in the exercise of a reasonable diligence, he employed an agent to do it, who

did it in part, but from the voluminous character of the record, and the great number of copies required to be made out, he was unable to serve all. This application for enlarging the time, was addressed to the sound discretion of the Court, which we will not control, unless flagrantly abused.

The motion to make *Brown, of Marion,* a party, was made, as counsel states, at the first term after the mistake as to his residence, was discovered. He being a stockholder, was a necessary party. There seems to have heen no want of diligence in correcting the mistake, and to serve him in the County of his residence and bring him before the Court, was both the right and the necessity of the complainants.

Let the judgment be affirmed.